# UNITED STATES DISTRICT COURT
## FOR THE
## EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| INTELLECTUAL WELLNESS, LLC,<br>a Michigan Limited Liability Company<br><br>Plaintiff<br><br>v.<br><br>IRONMAG LABS, LLC.<br>A Nevada Limited Liability Company<br><br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)   Civil Action No.<br>)<br>)   JURY TRIAL DEMANDED<br>)<br>) |

_____/

BATOR LEGAL PC
By: David G. Cain (P-33265)
Attorney for Plaintiff
400 West Maple
Suite 200
Birmingham, MI 48009
(248) 642-8120
_____/

## COMPLAINT FOR PATENT INFRINGEMENT

## AND DEMAND FOR JURY TRIAL

Plaintiff INTELLECTUALWELLNESS, LLC,("Plaintiff") hereby alleges for its complaint against  IRONMAG LABS, LLC ("Defendant"), on personal knowledge as to its own activities and on information and belief as to the activities of others, as follows

## I.  THE PARTIES

1.  Intellectual Wellness, LLC (hereinafter the "Plaintiff") is a Michigan Limited Liability Company with its principal place of business located in Brighton, Michigan.

2.  Plaintiff is the Assignee of the following United States Patents:

    a.  US Patent No. 8,084,446, entitled "Use of DHEA Derivatives for Enhancing Physical Performance" ("the '446 patent"); and

    b.  US Patent No. 8,338,399 entitled "Use of DHEA Derivatives for Enhancing Physical Performance" ("the '399 patent")

3.  The above patents are herein referred to as the "Patents in Suit"

4.  Plaintiff owns the Patents in Suit, including the right to sue and recover damages for the infringement thereof.

5.  Defendant IronMag Labs, LLC (hereinafter the "Defendant") is a Nevada Limited Liability Company with its principal place of business located in Las Vegas, Nevada.

## II. <u>JURISDICTION AND VENUE</u>

6.  This is an action for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code.  Accordingly, this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338, and 1367.

7.  Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 and 1400.

8.  This Court has personal jurisdiction over Defendant.   By way of example and without limitation, Defendant, directly or through intermediaries (including distributors, retailers, and others), formulates, makes, manufactures, ships, distributes, advertises, markets, offers for sale, and/or sells dietary supplement products that infringe on one or more claims of the Patents in Suit (hereinafter the "Infringing Products"), which include without limitation products sold under the "4 Andro Rx" and "1 Andro Rx" brand names, in the United States, the State of Michigan, and the Eastern District of Michigan.

9.  By way of further example and without limitation, Defendant has purposefully and voluntarily placed the Infringing Products into the stream of commerce with the knowledge,

understanding, and expectation that such Infringing Products would and will be purchased in the Eastern District of Michigan, and the products were and are actually purchased in the Eastern district of Michigan.

### III.  FACTUAL BACKGROUND

10. Defendant operates a dietary supplement company which provides sports nutrition, muscle enhancement, weight loss, pre- and post-workout, and other various supplements.

11. Defendant maintains a website at <u>IronMagLabs.com</u> to facilitate the sale and distribution of its products.

12. Defendant offer's its dietary supplements, including the Infringing Products, nationwide, including within the Eastern District of Michigan.

13.  As early as May 1, of 2012 Defendant was on notice of the Patents in Suit.

14. Defendant continued to be notified to cease and desist of the pending patent rights under The Patents in Suit and that certain products sold by Defendant infringed one or more of the claims of one or more of the patent rights of the Patents in Suit.

15. On May 1, 2012 Defendant acknowledged Plaintiff's Patent rights under the Patents in Suit but continued to, and still does, sell the Infringing products to the marketplace.

### IV.  THE DEFENDANT INFRINGMENTS

16. Defendant has committed the tort of patent infringement within the State of Michigan, and more particularly, within the Eastern District of Michigan, in that Defendant has caused the Infringing Products to be formulated made, manufactured, shipped, distributed, advertised, offered for sale and/or sold in this District, and continues to do so.

17. The Infringing Products are formulated, made, manufactured, shipped, distributed, advertised, offered for sale and sold by Defendant to include certain ingredients that, by

virtue of their inclusion in the infringing Products, infringe one or more of the claims of the Patents in Suit.

## A.  <u>DIRECT INFRINGMENTS</u>

18. Defendant's employees, agents, representatives, and/or other persons sponsored by or who endorse Defendant and/or Defendant's Infringing Products in advertising and marketing activities, have taken, used, and orally administered the Infringing Products.

19. The infringing products are formulated, made, manufactured, shipped, distributed, advertised, offered for sale and sold by Defendant to include certain ingredients that, by virtue of their inclusion in the infringing Products, infringe one or more of the claims of the Patents in Suit.

20. The Infringing Products are and were formulated, made, manufactured, shipped, distributed, advertised, offered for sale and sold by Defendant by virtue of the inclusion in the Infringing Products of one or more claims of the Patents in Suit, infringes and infringed one or more of the claims of one or more of the Patents in Suit, and as a result, when Defendant's employees, agents, representatives, and/or other persons sponsored by or who endorse Defendant and/or  Defendant's Infringing Products in advertising and marketing activities orally administer and administered the Infringing Products, they are and were practicing and practiced the methods disclosed in those claims.

21. The purposes for which these ingredients are included in the Infringing Products are and were, without limitation to enhance physical performance.

22. Defendant encouraged and/or is aware of the fact that its employees, agents, representatives, and/or other persons sponsored by or who endorse Defendant and/or Defendant's Infringing Products in advertising and marketing activities orally administered and administer the

Infringing products and practice and practiced the methods disclosed in one or more claim of the Patents in Suit, and these employees, agents, representatives, and/or other persons sponsored by or who endorse Defendant and/or Defendant's Infringing Products in advertising and marketing activities are and were acting under Defendant's direction and control when practicing these methods.

23. Therefore, Defendant is and was a direct infringer of one or more claims of the Patents in Suit.

## B. <u>INDIRECT INFRINGMENTS</u>

24. End-users of Defendant's Infringing Products were and also still are direct infringers of one or more claims of the Patents in Suit.

25. End-users of Defendant's Infringing Products have taken, used, and orally administered the Infringing Products.

26. The infringing products are and were formulated, made, manufactured, shipped, distributed, advertised, offered for sale and/or sold by Defendant by virtue of its inclusion in the Infringing Products, infringe and infringed one or more of the claims of the Patents in Suit, and as a result, when end-users of Defendant's Infringing Products orally administer and administered the Infringing Products, they are and were practicing and practiced the methods disclosed in those claims.

27. Defendant's labels and advertising for the Infringing Products explain and explained the elements and essential elements of one or more of the methods disclosed in the Patents in Suit, and those labels and advertising statements encourage, urge, and induce the Infringing Products' end-users and Defendant has therefore specifically intended to cause these end-users to directly infringe the claimed methods of the Patents in Suit, and did so in the past,

and  to purchase and orally ingest the products to practice those methods, and end-users do and did practice those methods.

28. Defendant has therefore specifically intended to cause these end-users to directly infringe the claimed methods of the Patents in Suit, and in fact urged them to do so.

29. The Infringing Products are and were not suitable for non-infringing uses, and none of Defendant's  labels or advertisements for their Infringing Products disclose or disclosed any uses for the products, nor for the compounds disclosed in the claimed methods of the Patents in Suit, that do not infringe these claimed methods.

30. The inclusion of the specific infringing compounds in the Infringing Products is and was material to practicing such methods.

31. Defendant had knowledge that the Infringing Products are and were especially adapted by end-users of the products for the practicing of such methods, and indeed, Defendant encouraged, urged, and induced, and still encourages, urges and induces the Infringing Products' end-users to purchase and orally administer the Infringing Products to practice such methods.

32. Defendant intentionally and knowingly induced encouraged, urged, and induced, and still encourages, urges and induces the Infringing Products' end-users to purchase and orally administer the Infringing Products for the purpose of practicing the claimed methods of the Patents in Suit, by having them orally ingest the compounds disclosed in such claims.

33. Defendant has and had knowledge of the fact that the accused products, particularly as administered, infringe on one or more of the claims of the Patents in Suit.

34. Defendant has and had direct firsthand knowledge of the Patents in Suit since at least May of 2012.

35. Defendant willfully and knowingly decided to infringe the Patents in Suit despite knowledge of the patent's existence and its knowledge of the Infringing Products infringements of the claims of the Patents in Suit.

36. At a minimum, and in the alternative, Plaintiff pleads that the Defendant willfully blinded itself to the infringing nature of the Infringing Products' sales.

37. Defendant did not cease its own direct infringement, nor its contributory infringement or inducement of infringement by end-users, despite its knowledge of the Patents in Suit and the end-users' infringing activities with respect to the Patents in Suit.

### COUNT I
### INFRINGEMENT OF U.S. PATENT NO. 8,084,446

38. Plaintiff incorporates the foregoing paragraphs as if fully restated herein.

39. Defendant has, and continues to do so, literally and directly infringed, or directly infringed under the doctrine of equivalents one or more claims of United States Patent No. 8,084, 446 (hereinafter, "the '446 Patent") by making, using, offering to sell, and/or selling in the United States, and/or importing into the United States the Infringing Products, or any one of those products.

40. In addition to the fact Defendant makes, uses, sells, and/or offers for sale the Infringing Products, and did so in the past, further examples of Defendant direct infringements include, without limitation, the fact that Defendant encouraged and/or was aware that its employees, agents, representatives, and/or other persons sponsored by or who endorse Defendant and/or Defendant's Infringing Products in advertising and marketing activities, orally administered the Infringing Products, and practiced and continue to practice the methods disclosed in one or more claim of the '446 Patent, and these employees, agents, representatives, and/or other

persons sponsored by or who endorse Defendant and/or Defendant's Infringing Products in advertising and marketing activities were acting under Defendant's direction and control when practicing these methods.

41. Defendant encouraged and was aware of these persons' oral administration of the Infringing Products for these purposes, these persons were acting under Defendant direction and control, and therefore Defendant directly practiced the methods and/or claims of the '446 Patent.

42. End-users of Defendant's Infringing Products were also direct infringers of one or more claims of the '446 Patent.

43. End-users of Defendant's Infringing Products have taken, used, and orally administered the Infringing Products.

44. The Infringing Products were formulated, made, manufactured, shipped, distributed, advertised, market, offered for sale, and sold  by Defendant to include certain ingredients that, by virtue of their inclusion in the Infringing products, infringed one or more of the claims of the '446 Patent.

45.  The Infringing Products were formulated, made, manufactured, shipped, distributed, advertised, marketed, offered for sale, and sold by Defendant to include certain ingredients that, by virtue of their inclusion in the Infringing products, infringed one or more of the claims of the '446 Patent, and as a result when end-users of Defendant Infringing Products orally administered the Infringing Products they were practicing the methods disclosed in one or more claims of that patent.

46.  Defendant labels and advertising for the Infringing Products explain and explained the elements and essential elements of one or more of the methods disclosed in the '446 Patent,

and those labels and advertising statements encouraged, urged, and induced, and continue to do so, the Infringing Products' end-users to purchase and orally ingest the products to practice those methods, and end-users did and continue to practice those methods.

47. Defendant therefore specifically intended to cause these end-users to directly infringe the claimed methods of the '446 Patent, and had and continue to urge them to do so.

48. The Infringing Products are, and were not at any time, suitable for non-infringing uses, and none of Defendant's labels or advertisements for the Infringing Products disclosed any uses for the products, nor for the compounds disclosed in the claimed methods, that did not infringe upon such methods.

49. Defendant have and had knowledge that the Infringing Products were especially adapted by end-users of the products for the practicing of such methods, and indeed, Defendant encouraged, urged, and induced, and still encourage, urge and induce the Infringing Products' end-users to purchase and orally administer the Infringing Products to practice such methods.

50. Defendant intentionally and knowingly induced encouraged, urged, and induced, and still encourage, urge and induce the Infringing Products' end-users to purchase and orally administer the Infringing Products for the purpose of practicing the claimed methods of the '446 Patent, by having them orally ingest the compounds disclosed in such claims.

51. Defendant had knowledge of the fact that the Infringing Products, particularly as administered, infringed on one or more claims of the '446 Patent.

52. Defendant had direct, firsthand knowledge of the '446 Patent itself.

53. Defendant's activities were without express or implied license by Plaintiff.

54. Defendant has profited though its infringement of the '446 patent, and continues to do so.

55. As a result of Defendant's acts of infringement, Plaintiff suffered, and will continue to suffer damages in an amount to be proved at trial.

56. Defendant intends to continue its acts of infringements, and Plaintiff has, and will continue to, suffer irreparable harm, for which there is no adequate remedy at law unless Defendant is enjoined by this Court from continuing such acts of infringement.

57. Defendant's past infringements and/or continuing infringements have been deliberate and willful, and this case is therefore an exceptional case, which warrants an award of treble damages and attorneys' fees in accordance with 35 U.S.C. §§ 284 and 285.

## COUNT II
## INFRINGEMENT OF U.S. PATENT NO. 8,338,399

58. Plaintiff incorporates the foregoing paragraphs as if fully restated herein.

59. Defendant has, and continues to do so, literally and directly infringed, or directly infringed under the doctrine of equivalents one or more claims of United States Patent No. 8,338,399 (hereinafter, "the '339 Patent") by making, using, offering to sell, and/or selling in the United States, and/or importing into the United States the Infringing Products, or any one of those products.

60. In addition to the fact Defendant makes, uses, sells, and/or offers for sale the Infringing Products, and did so in the past, further examples of Defendant direct infringements include, without limitation, the fact that Defendant encouraged and/or was aware that its employees, agents, representatives, and/or other persons sponsored by or who endorse Defendant and/or Defendant's Infringing Products in advertising and marketing activities, orally administered the Infringing Products, and practiced and continue to practice the methods disclosed in one or more claim of the '339 Patent, and these employees, agents, representatives, and/or other

persons sponsored by or who endorse Defendant and/or Defendant's Infringing Products in advertising and marketing activities were acting under Defendant's direction and control when practicing these methods.

61. Defendant encouraged and was aware of these persons' oral administration of the Infringing Products for these purposes, these persons were acting under Defendant direction and control, and therefore Defendant directly practiced the methods and/or claims of the '339 Patent.

62. End-users of Defendant's Infringing Products were also direct infringers of one or more claims of the '339 Patent.

63. End-users of Defendant's Infringing Products have taken, used, and orally administered the Infringing Products.

64. The Infringing Products were formulated, made, manufactured, shipped, distributed, advertised, market, offered for sale, and sold by Defendant to include certain ingredients that, by virtue of their inclusion in the Infringing products, infringed one or more of the claims of the '339 Patent.

65. The Infringing Products were formulated, made, manufactured, shipped, distributed, advertised, marketed, offered for sale, and sold by Defendant to include certain ingredients that, by virtue of their inclusion in the Infringing products, infringed one or more of the claims of the '339 Patent, and as a result when end-users of Defendant Infringing Products orally administered the Infringing Products they were practicing the methods disclosed in one or more claims of that patent.

66. Defendant labels and advertising for the Infringing Products explain and explained the elements and essential elements of one or more of the methods disclosed in the '339 Patent,

and those labels and advertising statements encouraged, urged, and induced, and continue to do so, the Infringing Products' end-users to purchase and orally ingest the products to practice those methods, and end-users did and continue to practice those methods.

67. Defendant therefore specifically intended to cause these end-users to directly infringe the claimed methods of the '339 Patent, and had and continue to urge them to do so.

68. The Infringing Products are, and were not at any time, suitable for non-infringing uses, and none of Defendant's labels or advertisements for the Infringing Products disclosed any uses for the products, nor for the compounds disclosed in the claimed methods, that did not infringe upon such methods.

69. Defendant have and had knowledge that the Infringing Products were especially adapted by end-users of the products for the practicing of such methods, and indeed, Defendant encouraged, urged, and induced, and still encourage, urge and induce the Infringing Products' end-users to purchase and orally administer the Infringing Products to practice such methods.

70. Defendant intentionally and knowingly induced encouraged, urged, and induced, and still encourage, urge and induce the Infringing Products' end-users to purchase and orally administer the Infringing Products for the purpose of practicing the claimed methods of the '339 Patent, by having them orally ingest the compounds disclosed in such claims.

71. Defendant had knowledge of the fact that the Infringing Products, particularly as administered, infringed on one or more claims of the '339 Patent.

72. Defendant had direct, firsthand knowledge of the '339 Patent itself.

73. Defendant's activities were without express or implied license by Plaintiff.

74. Defendant has profited though its infringement of the '339  patent, and continues to do so.

75. As a result of Defendant's acts of infringement, Plaintiff suffered, and will continue to suffer damages in an amount to be proved at trial.

76. Defendant intends to continue its acts of infringements, and Plaintiff has, and will continue to, suffer irreparable harm, for which there is no adequate remedy at law unless Defendant is enjoined by this Court from continuing such acts of infringement.

77. Defendant's past infringements and/or continuing infringements have been deliberate and willful, and this case is therefore an exceptional case, which warrants an award of treble damages and attorneys' fees in accordance with 35 U.S.C. §§ 284 and 285.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief as follows:

1.      For a declaration that Defendant has infringed the Patents in Suit and /or induced others to infringe one or more claims of the Patent in Suit, under of 35 U.S.C. §§ 271 *et seq.;*

2.      For a declaration that Defendant's infringement and/or inducement to infringe the Patents in Suit has been willful and deliberate;

3.      That Defendant be required to provide Plaintiff an accounting of all sales, gains, profits, and advantages derived by Defendant's infringements of the Patents in Suit.

4.      That Plaintiff be awarded compensatory damages, together with interest and costs, adequate to compensate Plaintiff for the wrongful infringing acts by Defendant in accordance with 35 U.S.C. § 284;

5.      That Plaintiff be awarded treble damages and pre-judgment interest under 35 U.S.C. § 284 with regard to the Patent in Suit in light of Defendant's willful and deliberate infringement, in accordance with 35 U.S.C. § 284;

6.      That this case be declared exceptional in favor of Plaintiff under 35 U.S.C. § 285 and that

Plaintiff be awarded its reasonable attorneys' fees and other expenses incurred in connection

with this action pursuant to 35 U.S.C. §§ 284 and 285 and Rule 54(d) of the Federal Rules of

Civil Procedure.

7.      For an order granting both preliminary and permanent injunctions pursuant to 35 U.S.C. §

283, enjoining the Defendant from further acts of infringement;

8.      That Plaintiff be awarded Punitive Damages; and

9.      That Plaintiff  be awarded such other relief as this Court may deem just and proper.


## DEMAND FOR JURY TRIAL

78. Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff respectfully requests a

   trial by jury of all claims and issues so triable.


 Date:   September 25, 2014

                                            /s/ David G. Cain
                                           Bator Legal PC
                                           By: David  Cain (P-33265)
                                           Attorney for Plaintiff
                                           400 West Maple
                                           Suite 200
                                           Birmingham, MI 48009
                                           (248) 642-8120
                                           Email: dgcain1955@sbcglobal.net